*In re* S.M. *et al.*, Minors (The People of the State of Illinois, Petitioner-Appellee, v. Angela Houston, Respondent-Appellant).

Fourth District   No. 4—90—0847

Opinion filed September 24, 1991.

Lynne R. Feldman, of Kirtley-Pavia-Marsh, P.C., of Urbana, for appellant.

Thomas J. Difanis, State's Attorney, of Urbana (Kenneth R. Boyle, Robert J. Biderman, and James Majors, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

Diana Lenik, of Urbana, guardian *ad litem*.

JUSTICE STEIGMANN delivered the opinion of the court:

On November 8, 1990, the circuit court terminated the parental rights of Angela Houston, respondent mother, as to her daughter S.M. (born May 8, 1986) and her twin daughters T.M. and L.M. (born January 16, 1989). The court had earlier found Houston to be an unfit parent. Houston appeals, arguing that (1) the State did not prove her parental unfitness by clear and convincing evidence, and (2) the court erred in finding it was in S.M.'s best interest to terminate her parental rights when the parental rights of S.M.'s father remain unaffected by the proceedings. We disagree and affirm.

In August 1990, the State filed a petition seeking a finding of unfitness and the termination of the parental rights of Houston and Clemith McCray (respondent father) regarding their twin daughters T.M. and L.M. The petition also sought to terminate the parental rights of Houston regarding her other daughter, S.M., but did not seek to terminate the parental rights of Charles Miles, S.M.'s father.

The petition to terminate parental rights was brought under section 1(D)(m) of the Adoption Act (Act) (Ill. Rev. Stat. 1989, ch. 40, par. 1501(D)(m)) and alleged that the trial court (1) entered an order in May 1989 finding all three minor respondents to be neglected, and (2) entered a dispositional order in June 1989 making the guardianship administrator of the Illinois Department of Children and Family Services (DCFS) the minor respondents' permanent guardian. The petition further alleged that the respondent parents were unfit because, within 12 months of the adjudication of neglect, they failed to make either reasonable progress toward the return of the minor respondents or reasonable efforts to correct the conditions which were the basis for the removal of the respondent minors from them.

On October 2, 1990, the day allotted for the adjudicatory hearing on the petition to terminate parental rights, McCray executed a final and irrevocable surrender of his parental rights regarding T.M. and L.M. The court then conducted the adjudicatory hearing regarding

Houston and, at the conclusion thereof, made its findings of fact. We have reviewed those findings, and we conclude that they are soundly based upon the evidence presented at the hearing. Accordingly, in response to Houston's argument that the evidence was not sufficient to prove by clear and convincing evidence that she was an unfit parent, instead of describing the evidence presented at trial, we quote extensively from the trial court's findings, which does an excellent job of setting forth the evidence:

"[T]he question of whether or not a parent has made reasonable progress is an objective standard. The Court may consider any particular shortcomings or handicaps with which the parent struggles, however the question is whether or not that parent has made reasonable progress, not whether or not the parent has tried. The Court is to demand measurable, observable progress if it is to conclude, in fact, reasonable progress has been made. ***

In this case *** this family came before the Court, initially, demonstrating some very immediate medical problems. The twins were born prematurely. In the opinion of Dr. Bassona, premature birth may well have been due to the Respondent Mother's admitted cocaine use throughout her pregnancy. [T.M.] had very serious apnea problems, and so an apnea monitor had been prescribed for [her]. The original problem was that the Respondent Mother was admittedly sleeping through the sound of the alarm. Witnesses described that the alarm was high pitched and very loud, much like a smoke alarm system. The Respondent Mother had admitted that she slept very close to the child but nevertheless did not awaken when the alarm sounded. As I recall, there was the testimony of an employee of Pulmocare Medical Supplies *** who described attempts to instruct the Respondent Mother in the use of the apnea monitor. He indicated that he had to do this twice, that the first day he attempted it she was extremely lethargic and was really incapable of understanding his explanations and so he had to come back again to explain how this worked.

Various witnesses described that the Respondent Mother was often not very responsive, was often lethargic, both around the children and in their presence. Specifically, Cynthia Robbins [a DCFS worker] indicated that when she attempted to interview the Respondent Mother, and in fact, when custody was taken from the Respondent Mother on March 21st of 1989, the Respondent Mother was extremely lethargic, had [L.M.] in her

lap and reacted not at all when the child was removed. The Respondent Mother's speech was very slurred and *** in the opinion of Ms. Robbins, the Respondent Mother was under the influence of alcohol and possibly marijuana and cocaine at that time.

The Respondent Mother was unemployed. By the time [of the] dispositional hearing, *** of course, she had no residence because she was in Hour House.

The presenting problem, *** overall, was her substance dependency and abuse. She admitted extensive cocaine usage and marijuana usage; and in fact, Ms. Robbins indicated that on February the 17th of 1989, when she interviewed the Respondent Mother in her home, the Respondent Mother acknowledged that throughout the pregnancy she was using cocaine twice a week, and that she knew it could hurt the fetuses but continued anyway, and on that very date Ms. Robbins noticed what she described as a stifling odor of marijuana in the home. It's noteworthy that during Ms. Robbins visit on February 17th, [T.M.], who had breathing problems in part because of her prematurity, was present in the home and subjected to that stifling odor [and] environment.

For these reasons, the Court directed various dispositional orders towards the Respondent Mother, noting that not only was there the current situation that was a problem, but that there had been a prior indicated report in December of 1988, for actual physical abuse.

Of course, the Court ordered residential treatment pursuant to the recommendations of the experts, that the Respondent Mother complete parenting classes, that she not change her residence without at least fourteen days' prior notice to the guardian, that she exercise all reasonable effort to obtain and maintain employment, to obtain a GED, and she maintain regular visitation with her children. That was some fifteen months ago. Since then, under all of the evidence that's been presented today, it is uncontradicted that the Respondent Mother has yet to complete a course of residential treatment, in spite of at least three referrals and two attempts; she has yet to complete a course of parenting classes, either through Children's Home and [Aid] Society, to whom she was originally referred or pursuant to the SAFE Program conducted by Prairie Center for Substance Abuse; and not only has she changed residences, she has [done so] without advising the guardian in advance, she has

refused, steadfastly and continuously, to advise the guardian as to where she's living. Aside from sporadic employment, there has been none. I believe the testimony of Ms. Graham [a DCFS worker] was that the Respondent Mother had a number of jobs for a day or two, a month at the outside. She did maintain regular visitation, apparently, at least up until August when she missed, I believe it was four or five consecutive visits, during an extended stay, apparently, in Denver, Colorado. So, if the Respondent Mother has made progress here, it has been without complying with the dispositional order, and without complying with the client service plans presented by the Department.

We are in a situation today in which the Respondent Mother has no residence at which these children could live; she has not employment of which the Court is aware; and [she] is apparently undertaking no treatment, in-patient or otherwise, to address the substance abuse and dependency problem. Now, the assumption was, from the outset of this case—I suppose inference is a better word—that the other problems, the residential instability, the employment instability, the failure to attend to the children's medical needs, particularly [T.M.]'s needs, the inability to wake up to the apnea monitor and things *** of this nature, were due to substance abuse. In the event that, in fact, the Respondent Mother has begun the recovery process and is abstaining from the use of controlled substances and abuse of alcohol, without residential treatment and without out-patient treatment, and without individual counseling, without all of the other things that have been recommended, then one must ask, why is there still a lack of employment, a lack of residential stability and a lack of meaningful parenting skills? So, no matter how we approach the problem, whether we look at it in terms of the Respondent Mother's addressing the alcohol and drug dependency and abuse, or we look at it strictly from a parenting aspect, without regard to the alcohol and drug abuse, there simply has been no progress here, reasonable or otherwise.

*** As the Appellate Court has often reminded trial judges such as myself, in assessing reasonable progress the Court is not to look at any one specific period of time, rather the Court is to look at the entire period of time and assess reasonableness in light thereof. Here, when I search this record for demonstrable, measurable progress, I find before me a Respondent

Mother who has no independent housing, apparently is unemployed, is undoubtedly still substance dependent. I don't know whether or not she's abusing, but certainly she's not pursuing any course of treatment or recovery. There's simply no demonstrable progress with regard to the situation as it appeared before this Court on \*\*\* June 21st of 1989, when [the written dispositional] order was signed.

\* \* \*

With regard to the Respondent Mother, the Court finds by clear and convincing evidence that she is an unfit parent, by reason of having failed to make reasonable progress."

On November 7, 1990, the trial court conducted a dispositional hearing on the State's petition to terminate Houston's parental rights. After considering the dispositional report prepared by DCFS and the arguments of counsel, the trial court made the following findings:

"Sadly, it does appear that there is no realistic prospect of meaningful progress or a true commitment to recovery by the Respondent Mother; certainly, in the foreseeable future. And, hence the only alternative to terminating parental rights would be to consign the children to a lifetime of uncertainty, at least a childhood of uncertainty. \*\*\* I believe they deserve better than that, and it's the Court's responsibility to pursue better than that.

So, the Court does find it's in the best interest of the Respondent Minors, and the public, that the prayer of the Supplemental Petition be allowed and that the Respondent Mother, Angela Houston, have all residual parental rights and responsibilities terminated as to the Respondent Minors; and that the Respondent Minors, and each of them, be relieved of all obligations of obedience and maintenance to the Respondent Mother, and it is so ordered. Gary T. Morgan, Guardianship Administrator of the Illinois Department of Children and Family Services, and any successor in office, is continued as the guardian of the Respondent Minors, with power to place the Respondent Minors. And, the guardian is further authorized to appear in any court where from time to time a petition for the adoption of the respondent minors, [T.M.] and [L.M.] may be pending, and to consent to that adoption, without further notice to any party.

\*\*\*

As to the respondent minor, [S.M.], the cause is continued for a review hearing to February 19th, 1991, at 2:10 p.m., and that, of course, is with respect to [Miles] only."

■ On appeal, Houston argues that the State's evidence at the adjudicatory hearing failed to prove by clear and convincing evidence that she was an unfit parent on the ground that she failed to make reasonable progress toward the return of her children to her within 12 months after they were adjudicated to be neglected minors. The standard of review regarding the trial court's findings is the following:

> "It is well established that a finding of parental unfitness must be supported by clear and convincing evidence. [Citations.] The findings of the trial court must be given great deference since it has the opportunity to view and evaluate the testimony of the witnesses, and the trial court's decision should not be reversed on appeal unless it is contrary to the manifest weight of the evidence." *In re Allen* (1988), 172 Ill. App. 3d 950, 956, 527 N.E.2d 647, 651.

See also *In re A.T.* (1990), 197 Ill. App. 3d 821, 829-30, 555 N.E.2d 402, 408.

■ Recently, in *In re L.L.S.* (1991), 218 Ill. App. 3d 444, 460-62, this court discussed what "reasonable progress" meant under section 1(D)(m) of the Act, as follows:

> " '[R]easonable progress' *** requires, at a minimum, measurable or demonstrable movement toward the goal of the return of the child. [Citation.] 'Reasonable progress' is an objective standard which exists when the court, based on the evidence before it, can conclude that the progress being made by a parent to comply with directives given for the return of the child is sufficiently demonstrable and of such a quality that the court, in the *near future*, will be able to order the child returned to parental custody. The court will be able to order the child returned to parental custody in the near future because, at that point, the parent *will have fully complied* with the directives previously given to the parent in order to regain custody of the child.
>
> *** 'Measurable or demonstrable movement' cannot constitute 'reasonable progress,' as spoken of in section 1(D)(m) of the Act, if it must be measured with a micrometer. ***
>
> If the trial court's denial of the State's petition were permitted to stand, that decision would condemn L.L.S. to a childhood in foster homes while the courts continue to wait (apparently with unceasing patience) for respondents to 'get their act together.' The legislature has quite reasonably provided that parents, such as respondents, should have at least 12 months to

do that before their parental rights may be terminated. Respondents have had considerably longer ***." (Emphasis in original.)

Based upon our examination of the record, we conclude that the trial court's findings at the adjudicatory hearing (that we quoted at length earlier) are fully justified and clearly not contrary to the manifest weight of the evidence. In accordance with the standards for measuring "reasonable progress" as we described them in *L.L.S.*, the record in the present case is devoid of any evidence upon which the trial court could have concluded that Houston's progress to comply with the directives given to her for the return of her children was "sufficiently demonstrable and of such a quality that the court, in the *near future*, will be able to order the [children] returned to [her] custody." (Emphasis in original.) *L.L.S.*, 218 Ill. App. 3d at 461.

The trial court found Houston unfit because (1) she failed within 12 months after her children were adjudicated to be neglected to make reasonable progress toward their return, and (2) she failed to make reasonable efforts to correct the conditions which were the basis for the removal of those children from her home. However, we need not address the "reasonable efforts" ground. We find the evidence fully sufficient to support the finding of Houston's parental unfitness based on her failure to make reasonable progress, and that finding is sufficient to terminate her parental rights even if the evidence were not sufficient to support other grounds alleged. See *L.L.S.*, 218 Ill. App. 3d at 445.

Houston also argues that the trial court erred in finding that it was in S.M.'s best interest to terminate her parental rights when the parental rights of S.M.'s father, Miles, were not affected in these proceedings. Houston claims that terminating one parent's parental rights is erroneous if the other parent is not also part of the termination petition, absent a compelling need to get the parent whose rights are terminated out of the child's life forever. We disagree.

Houston calls to our attention the DCFS report prepared for the October 1990 dispositional hearing, which refers to Miles as follows: "Charles Miles is not a part of the petition to terminate parental rights because he has made very good progress." Houston then maintains that Miles' parental rights may never be terminated. Houston argues that where, as here, adoption was not in the foreseeable future for S.M. because Miles' parental rights will continue unaffected, the trial court erred in finding it to be in S.M.'s best interest to terminate Houston's parental rights. We note, however, that the same DCFS report Houston cites regarding Miles also contains a reference to discus-

sions between DCFS workers and Miles about his voluntarily surrendering his parental rights regarding S.M., as McCray did regarding his parental rights concerning Houston's other two children. Thus, the continuing nature of Miles' role in S.M.'s life was, at best, uncertain. The record further shows that Houston and Miles had not been residing together since at least the June 1989 dispositional hearing at which DCFS was made the permanent guardian of the children. Our point is that all of this information was before the trial court at the time it made its decision, and we are confident the trial court gave it whatever weight was appropriate in determining the best interest of S.M.

■ We hold that when the evidence supports a finding that one parent is unfit under section 1 of the Act and it is in the best interest of the child that the parental rights of that parent be terminated, the trial court may so order even though the parental rights of the child's other parent have not been terminated or are not, as of that moment, even subject to a petition for termination. A petition seeking to terminate the parental rights of one parent may be brought after such a petition has already been successfully brought against the other parent; that one parent has not been (and may never be) found unfit is merely one additional factor which the trial court may give whatever weight it believes appropriate when it is deciding at a dispositional hearing whether it is in the best interest of the child that the parental rights of the first parent be terminated.

On the record before us, we find no abuse of the trial court's discretion in determining that it was in S.M.'s best interest to terminate Houston's parental rights even though Miles had not yet had (and may never have) his parental rights terminated.

For the reasons stated, the orders of the trial court terminating Houston's parental rights are affirmed.

Affirmed.

LUND, P.J., and GREEN, J., concur.