# Illinois Official Reports

## Appellate Court

---

### *In re L.B.*, 2015 IL App (3d) 150023

---

| | |
|---|---|
| Appellate Court Caption | *In re* L.B., S.B., and K.B., Minors (The People of the State of Illinois, Petitioner-Appellee, v. Amanda B., Respondent-Appellant). |
| District & No. | Third District<br>Docket Nos. 3-15-0023, 3-15-0024, 3-15-0025 cons. |
| Rule 23 Order filed<br>Motion to publish allowed<br>Opinion filed | May 28, 2015<br><br>June 23, 2015<br>June 23, 2015 |
| Decision Under Review | Appeal from the Circuit Court of Peoria County, Nos. 12-JA-312, 12-JA-313, 12-JA-314; the Hon. Albert L. Purham, Jr., Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | Louis P. Milot, of Peoria, for appellant.<br><br>Jerry Brady, State's Attorney, of Peoria (Richard T. Leonard, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People. |

Panel JUSTICE O'BRIEN delivered the judgment of the court, with opinion.
Justices Carter and Lytton concurred in the judgment and opinion.

**OPINION**

¶ 1 The minors, L.B., K.B., and S.B., were adjudicated neglected by reason of an injurious environment. The respondent mother, Amanda B., was found dispositionally unfit, and she was ordered to complete certain tasks before the minors could be returned to her care. However, the State filed a petition for termination of the mother's parental rights as to all three minors, alleging that she failed to make reasonable progress toward the return of the minors. The circuit court found the petitions to be proven by clear and convincing evidence, and it found that it was in the best interest of all three minors that the mother's parental rights be terminated. The mother appealed, challenging: (1) the finding of unfitness with respect to L.B.; and (2) the best interest finding with respect to L.B. and K.B.

¶ 2                                        FACTS

¶ 3 On December 26, 2012, the State filed juvenile petitions alleging that the minors, L.B., K.B., and S.B., were neglected due to an injurious environment because the mother left the minors in the care of her own mother, who had serious mental health issues. The minors were placed in the temporary custody of the Department of Children and Family Services (DCFS), and they were all placed with the same nonrelative foster family. On March 13, 2013, the minors were adjudicated neglected. On April 24, 2013, the mother, and the fathers of K.B. and S.B., were found to be dispositionally unfit. The minors were made wards of the court and DCFS was named guardian of the minors with the right to place. The father of L.B., Jim F., was found to be fit. The order gave DCFS discretion to return L.B. to Jim F. The mother was ordered to perform certain tasks in order to correct the conditions that led to the adjudication of neglect: (1) execute all necessary releases; (2) cooperate fully with DCFS; (3) obtain a drug and alcohol assessment and complete any recommended treatment; (4) perform two random drug drops per month; (5) submit to a psychological examination; (6) participate in and successfully complete counseling; (7) participate in and successfully complete a parenting course; (8) obtain and maintain stable housing; (9) visit with the children as scheduled; (10) successfully complete homemaker services; and (11) cooperate with notifying DCFS of any changes in living arrangements within three days.

¶ 4 After the dispositional hearing, in August 2013, DCFS placed L.B. with her father, Jim F. At the same time, K.B. was placed with her paternal grandparents. The October 2, 2013, permanency review order indicates that the permanency goal with respect to L.B., which was "22–return home within one year," had been achieved because she was with her father. L.B. remained a ward of the court, but guardianship of L.B. was returned to Jim F. The goal for S.B. and K.B. was changed to "23–return home pending status," with guardianship remaining with DCFS.

¶ 5    On June 2, 2014, the State filed petitions to terminate the mother's parental rights for failing to make reasonable progress toward the return of the minors during two overlapping nine-month time periods, March 13, 2013, to December 13, 2013, and August 1, 2013, to May 1, 2014. The petition with respect to S.B. also sought to terminate the parental rights of her father, David S.

¶ 6    At the hearing on the petition, the State asked the circuit court to take judicial notice of various petitions and orders in the files. Those were all admitted without objection, except that the circuit court limited the judicial notice to not include findings in the permanency review orders. The State then offered Exhibit 1-5, which included, among other things, certified records from Fortes Laboratory and the mother's counseling records. All were admitted without objection.

¶ 7    Joan Pegues, a child welfare specialist with DCFS, testified that she was the caseworker for the mother and the minors from the beginning of the case until June 2014. She testified that between March 13, 2013, and September 19, 2013, the mother missed two meetings with her. The mother did successfully complete a parenting class, and her attendance at visits with the minors was good. The mother also completed a psychological evaluation. However, the mother was not compliant with her ordered drug drops. Exhibit 1 showed that the mother only did 3 of her 21 drug drops during the two relevant time periods, and 2 of those tested positive for drugs. As of March 6, 2014, she had not yet scheduled a drug and alcohol assessment. She was also discharged from counseling for failing to attend, even though DCFS provided the mother with a bus pass and homemaker services. Exhibit 2 contained the records from the counselor, which indicated that the mother only attended the initial appointment.

¶ 8    At the conclusion of the hearing, the circuit court found that the State had proven by clear and convincing evidence that the mother was unfit because she had not made reasonable progress toward the return of the minors during the relevant nine-month periods. At the best interest hearing, the mother testified that she attended visits with the minors and the visits went well. The mother testified that she was engaged in counseling, and she was going to begin more intensive counseling on January 8, 2015. She was prepared to complete any remaining services in order to have her fitness restored. The circuit court found that it was in the best interest of the minors to terminate the mother's parental rights. David S.'s parental rights were also terminated. Jim F. was named guardian of L.B. and that wardship was terminated. The mother appealed.

¶ 9                                                    ANALYSIS

¶ 10    The mother argues that the circuit court erred in finding her unfit as to L.B., contending that the State was not authorized to bring a petition to terminate the mother's parental rights. The mother does not challenge the factual basis for finding her unfit.[1] The mother also contends that the return home permanency goal was already achieved with L.B., before the petition for the termination of the mother's parental rights was filed, because L.B. had been

---

[1]The mother does argue that, as of the permanency review hearing on November 12, 2014, DCFS was no longer paying for her services and her visits with the minors had been reduced because the termination petitions had been filed. The State asks us to strike some of this argument as irrelevant. This court is fully aware of the relevant time periods in this case, and will only consider evidence relevant to that time frame.

returned to her father. Thus, the mother argues that permanency had been achieved with respect to L.B. and any reasonable progress on her part was illusory.

¶ 11    As the State correctly points out, the mother failed to raise the pleading issue in the circuit court. Pleading defects generally must be raised in the trial court, or the defect is waived. *In re Andrea D.*, 342 Ill. App. 3d 233, 242 (2003). However, since termination of parental rights affects a fundamental liberty interest, we will consider the issue for plain error. *Id.*

¶ 12    We find no error. Section 2-13(4.5) of the Juvenile Court Act of 1987 does not limit the State's power to commence a termination proceeding. 705 ILCS 405/2-13(4.5)(a) (West 2012); *In re Brandon A.*, 395 Ill. App. 3d 224, 234 (2009). Rather, it imposes a duty on DCFS to request that the State file a petition for termination of parental rights under certain circumstances. *Id.* The State may file a petition requesting termination of parental rights any time after the entry of the dispositional order. 705 ILCS 405/2-13(4) (West 2012); *Brandon A.*, 395 Ill. App. 3d at 234.

¶ 13    Section 1(D)(m)(ii) of the Adoption Act provides that a parent is unfit for failing "to make reasonable progress toward the return of the child to the parent during any 9-month period following the adjudication of neglected or abused minor." 750 ILCS 50/1(D)(m)(ii) (West 2014). When the evidence supports a finding that one parent is unfit, and it is in the best interest of the minor to terminate that parent's parental rights, the circuit court may enter that order–even though the other parent may not be subject to a termination petition. *In re S.M.*, 219 Ill. App. 3d 269, 277 (1991). The fitness of the other parent is merely a factor that the circuit court may consider at a best interest hearing. *Id.*

¶ 14    Once a parent is found to be unfit, the focus shifts to the minor, and the circuit court must determine whether termination of parental rights is in the best interest of the minor. *In re D.T.*, 212 Ill. 2d 347, 352 (2004). The circuit court focuses on the minor's welfare and whether termination would improve the minor's future, including his financial, social, and emotional well-being. *In re Daphnie E.*, 368 Ill. App. 3d 1052, 1071-72 (2006).

¶ 15    In determining whether termination of a parent's rights is in a minor's best interest, the circuit court considers the following factors: (1) the minor's physical safety and welfare; (2) development of his identity; (3) his background and ties, including familial, cultural, and religious; (4) the minor's sense of attachments; (5) the minor's wishes; (6) the minor's ties to his community; (7) the minor's need for permanence, including the need for stability and continuity of relationships with parent figures and siblings; (8) the uniqueness of every family and child; (9) risks related to substitute care; and (10) the preferences of individuals available to care for the minor. 705 ILCS 405/1-3(4.05)(a) to (j) (West 2012). The State must prove by a preponderance of the evidence that termination is in the minor's best interest. *In re D.T.*, 212 Ill. 2d at 366. We will not reverse a circuit court's finding regarding termination unless it is against the manifest weight of the evidence. *In re Deandre D.*, 405 Ill. App. 3d 945, 952 (2010).

¶ 16    The mother argues that the circuit court terminated her parental rights as to L.B. for the sole purpose of making things convenient for L.B.'s father. As evidence of this, the mother points to the fact that the circuit court discharged the wardship of L.B. right after it found that it was in L.B.'s best interest to terminate the mother's parental rights. The mother also argues that the termination of her parental rights was unnecessary because L.B. had permanence with her father. The mother does not address any of the other best interest factors.

¶ 17　　　We find that the circuit court's determination that it was in the best interest of L.B. to terminate the mother's parental rights was not against the manifest weight of the evidence. As stated above, the fact that L.B.'s father was a fit parent was a factor for the circuit court to consider. The circuit court also considered the other best interest factors. It found that the mother had been unable to provide for any of the minors' basic needs, such as physical safety, welfare, shelter, health, and clothing. The circuit court also noted that L.B. was developing an identity with her father and her stepmother, and she was developing community ties, school, and friends with her father. The circuit court also found that all the minors' need for permanence favored termination.

¶ 18　　　As for K.B., the mother argues that the State failed to prove it was in K.B.'s best interest to terminate the mother's parental rights. She argues that the fact that she failed to complete her services was used against her, even though it was unclear what services were being provided as of the date of the best interest hearing. She also contends that the circuit court failed to give appropriate weight to the best interest factors. Finally, the mother argues that the circuit court's latest permanency review order, changing K.B.'s permanency goal to guardianship, reflected the circuit court's determination that guardianship was in K.B.'s best interest.

¶ 19　　　As noted above, once a parent has been found to be unfit, the focus shifts to the minor. *In re D.T.*, 212 Ill. 2d at 352. Thus, the mother's argument that it was unclear whether services were available to her at the time of the best interest hearing was not relevant to the determination of whether it was in the best interest of K.B. to terminate the mother's parental rights. There is no evidence, nor does the mother argue, that services were unavailable to the mother during the overlapping nine-month periods relevant to the mother's unfitness.

¶ 20　　　The circuit court's determination that it was in K.B.'s best interest to terminate the mother's parental rights was also not against the manifest weight of the evidence. The circuit court considered K.B.'s age, the length of time that she was in foster care, and her bond with her foster parents, her paternal grandparents. It acknowledged that K.B. enjoyed her visits with the mother, but did not ask about her between visits. As noted above, the circuit court found that the mother had been unable to provide for any of the minors' basic needs, such as physical safety, welfare, shelter, health, and clothing. The circuit court sufficiently considered the statutory best interest factors, including the potential ability of K.B.'s father to provide permanence for K.B, in concluding that it was in K.B.'s best interest to terminate the mother's parental rights. See *In re Jaron Z.*, 348 Ill. App. 3d 239, 262-63 (2004) (a circuit court is not required to specifically discuss each best interest factor in support of its determination).

¶ 21　　　　　　　　　　　　　　　　CONCLUSION

¶ 22　　　The judgment of the circuit court of Peoria County is affirmed.

¶ 23　　　Affirmed.