NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2022 IL App (4th) 220253-U

NOS. 4-22-0253, 4-22-0254, 4-22-0255 cons.

IN THE APPELLATE COURT

FILED
August 25, 2022
Carla Bender
4th District Appellate
Court, IL

OF ILLINOIS

FOURTH DISTRICT

| | | |
|---|---|---|
| *In re* T.E., R.E., and J.R., Minors | ) | Appeal from the |
| | ) | Circuit Court of |
| (The People of the State of Illinois, | ) | Henry County |
|       Petitioner-Appellee, | ) | Nos.  20JA9 |
|       v. | ) |       20JA10 |
| Tasha R., | ) |       20JA11 |
|       Respondent-Appellant). | ) | |
| | ) | Honorable |
| | ) | Terence M. Patton, |
| | ) | Judge Presiding. |

JUSTICE HARRIS delivered the judgment of the court.
Presiding Justice Knecht and Justice Turner concurred in the judgment.

**ORDER**

¶ 1    *Held*:  The appellate court affirmed, holding that (1) the trial court's failure to hold a dispositional hearing within six months of the children's removal from the respondent mother's care did not render the subsequent proceedings void, (2) the court's finding that the respondent mother was unfit to care for the minors was not against the manifest weight of the evidence, and (3) the court's finding that it was in the minors' best interest to terminate the respondent mother's parental rights was not against the manifest weight of the evidence.

¶ 2    Respondent, Tasha R., appeals the trial court's order terminating her parental rights as to her three children, T.E. (born November 15, 2006), R.E. (born July 27, 2008), and J.R. (born November 2, 2013). Tasha R. argues: (1) the trial court's failure to hold a dispositional hearing within six months of the children's removal from Tasha R.'s care rendered the subsequent proceedings void, (2) the trial court's finding of parental unfitness was based upon an

error of law and was against the manifest weight of the evidence, and (3) the trial court's finding that it was in the minors' best interest to terminate Tasha R.'s parental rights was against the manifest weight of the evidence. We affirm.

¶ 3                              I. BACKGROUND

¶ 4        On February 7, 2020, the State filed petitions for adjudication of wardship as to T.E., R.E., and J.R. Tasha R. was named as a respondent in all three cases. Godwin E., the father of T.E. and R.E., was named as a respondent in the petitions relating to T.E. and R.E. J.R.'s father was deceased. The petitions alleged that all three minors were neglected in that they were in an environment injurious to their welfare. Specifically, the petitions alleged Tasha R. had "severe mental health issues" that caused her to cover vents, tape doors shut, and keep the apartment at 90 degrees, which placed the children at risk of harm. The petition regarding J.R. additionally alleged that she was neglected in that she was not receiving proper support, education, or care because Tasha R. was not sending J.R. to school and believed she was four years old when she was actually six years old. The petitions also alleged that Godwin E. left T.E. and R.E. in Tasha R.'s care with little contact despite knowing of her mental health issues.

¶ 5        The State filed motions for temporary custody with regard to all three minors. The motions alleged the minors were taken into custody on February 6, 2020. On February 10, 2020, the trial court entered an order placing the minors in the temporary custody of the Department of Children and Family Services (DCFS).

¶ 6        An adjudicatory hearing was held on September 23, 2020. At the hearing, Angie Walters, a DCFS employee, testified she visited Tasha R.'s residence after receiving a hotline call. Walters testified it was over 80 degrees inside the residence, the back door was barricaded with chairs, one of the rooms upstairs was "tied shut," and the vents were covered with rugs.

Tasha R. told Walters that people had been breaking into the apartment and had been coming in through the vents. Walters stated the vents were not large enough for people to fit through. Tasha R. said there were birds in the area that had tried to take her children on two prior occasions. Tasha R. initially told Walters J.R. was four years old and then said J.R. had just turned five. However, J.R. was actually six years old at the time and was not enrolled in school.

¶ 7        Tasha R. testified that there were "gigantic hawks" the size of humans in Kewanee, Illinois, where she lived. She had to keep the windows locked and covered, otherwise the hawks would try to enter her residence. Tasha R. was concerned that these "king hawks" could attack and injure her children.

¶ 8        The trial court entered an adjudicatory order finding that the children had been neglected by Tasha R.

¶ 9        On October 14, 2020, the trial court held a dispositional hearing. The court found it was in J.R.'s best interest to be made a ward of the court. The court found Tasha R. was unfit to care for J.R. due to her mental health issues, and J.R.'s father was deceased. The court ordered that DCFS would have custody and guardianship of J.R. The trial court also found it was in T.E. and R.E.'s best interest to be made wards of the court. The court found Tasha R. was unfit to care for them but Godwin E. was fit. The court ordered that Godwin E. would have custody and guardianship of T.E. and R.E.

¶ 10        On January 19, 2022, the State filed amended motions to terminate Tasha R.'s parental rights as to all three minors. The amended motions alleged Tasha R. was unfit under section 1(D)(m)(ii) of the Adoption Act (750 ILCS 50/1(D)(m)(ii) (West 2020)) in that she failed to make reasonable progress toward the return of the minors during the nine-month periods from October 15, 2020, through July 15, 2021, and from March 1, 2021, through December 1, 2021.

The amended petitions also alleged Tasha R. was unfit under section 1(D)(p) of the Adoption Act (*id.* § 1(D)(p)) in that she was unable to discharge her parental duties due to a mental impairment, mental illness, or intellectual disability and that this was supported by competent evidence from a psychiatrist, licensed clinical social worker, or clinical psychologist.

¶ 11　　　　The trial court held a fitness hearing on the issue on February 10, 2022. Kyla Carlson testified she was a mental health outpatient therapist. She had a bachelor's degree in social work and a master's degree in social work, but she was not a licensed clinical social worker. Tasha R. was a former client. Carlson conducted a mental health assessment of Tasha R. and gathered collateral information about Tasha R. from DCFS. Carlson "diagnosed" Tasha R. with "[m]ental disorder not otherwise specified." She also made a "rule-out diagnosis" of "schizophrenia spectrum or other psychotic disorder." Carlson explained:

> "[T]o rule out a diagnosis, it means that we're keeping something in mind *** that the symptoms could fall within. If it's the schizophrenia spectrum or other psychotic disorder that could be a delusional disorder, that could be schizophrenia, schizoaffective disorder. It could fall within that realm."

¶ 12　　　　Carlson recommended that Tasha R. engage in mental health therapy. Tasha R. attended only two therapy sessions and was discharged for noncompliance in April 2021. Carlson occasionally received phone calls from Tasha R. but could never reach her when she attempted to return the calls. Carlson sent Tasha R. a letter informing her that she was being discharged from treatment. Tasha R. never called Carlson or indicated she wanted to reengage in services. At the time Tasha R. was discharged, Carlson believed she was still in need of mental health services and that her mental health disorder would not correct itself in the near future.

¶ 13    Carlson was concerned that Tasha R. was experiencing delusions and "potential paranoia." Tasha R. did not have insight into the fact that she was experiencing delusions. Carlson believed that Tasha R.'s delusions contributed to "very impulsive decision making." Tasha R. indicated she had been seeing bobcats and birds that were "up to her hip in tallness." This led Carlson to believe Tasha R. might be experiencing hallucinations. However, Carlson was not able engage with her long enough to determine whether she was actually hallucinating.

¶ 14    Nicole Cruz testified that she was previously the caseworker on the minors' case. She was eventually promoted to a supervisory position, and a new caseworker was assigned to the case in October 2021. Cruz oversaw the new caseworker in her supervisory role. Cruz testified that the minors initially came into care due to Tasha R.'s mental health issues. During the investigation, DCFS also learned that the children were not attending school regularly. Cruz testified that a service plan, which contained tasks to be completed before the children could return to Tasha R., was developed. Pursuant to the service plan, Tasha R. was required to complete a mental health evaluation and "follow through with the recommendations of that evaluation," complete parenting education and coaching, continue with supervised visitation, and maintain her housing.

¶ 15    Cruz testified that in October 2020, Tasha R. moved out of the apartment she had been living in at the start of the case. Cruz visited Tasha R. at her new residence approximately once per month until October 2021. Tasha R. never allowed Cruz to view the second floor of the residence. The refrigerator was never in the same spot when Cruz visited and was "typically moved from its original location." There was duct tape on all the cabinets. A door, which Cruz assumed led to a lower floor or a closet, was "barricaded" by a couch. Cruz asked Tasha R. about the barricading and the duct tape. Tasha R. never gave her a "clear answer," but would say that

"everything [was] fine" and that it was "just tape." Tasha R. eventually moved the couch "slightly over" but would not allow Cruz to access the door behind it. She never removed the tape from the cabinets. The vents were never covered at the new residence, and the thermostat was not set to a high temperature.

¶ 16        Cruz stated Tasha R. never provided her with verification that she had been successfully discharged from mental health treatment. Cruz told Tasha R. that her mental health issues were one of the largest barriers to her children being returned to her and that she was required to participate in treatment. Tasha R. told Cruz she did not need mental health treatment because she did not have any mental health problems. Tasha R. repeatedly cautioned Cruz about "giant king hawk birds," which were "life-sized birds." On several occasions, Tasha R. told Cruz she believed the juvenile case had been open for five to seven years, when it had only been open for two years.

¶ 17        Cruz testified that Tasha R. had weekly supervised visitation with her children. Her visitation schedule was never altered or expanded because she was not making progress toward the goals in the service plan and was not addressing her mental health issues. Cruz believed expanding visitation would have posed a potential risk to the children. Tasha R. did not engage in parenting classes, which was required under the service plan. She told Cruz that she was a good mother and she did not need parenting services.

¶ 18        Cruz stated that, as of December 1, 2021, it was not likely that the children would be returned to Tasha R.'s care in the very near future. At that time, Tasha R. was no closer to being reunited with her children than when they were first taken into care because she had not corrected the conditions that brought the children into care.

¶ 19          Tasha R. testified that no one from DCFS told her she needed to complete services; they just told her they were taking her children. According to Tasha R., Cruz asked her to "go on home visits" and meet with Cruz's supervisors, but that was "about it." Tasha R. recalled seeing Carlson for counseling. She and Carlson briefly talked about "life," her children, and her feelings about the situation with DCFS. She returned Carlson's calls and never attempted to avoid contact with Carlson. According to Tasha R., Carlson said that Tasha R. seemed "fine" but told her she could come in if she ever needed to talk about anything. Tasha R. stopped seeing Carlson because there was no need to see her. Tasha R. stated she attended all her visitation with her children.

¶ 20          Tasha R. stated she moved to a new public housing residence during the pendency of the case. The roof at her old residence "kept collapsing in different types of spots," and she moved to a "sailor house" at a new housing complex. Tasha R. stated she was a "pinnacle land owner" and owned over 900 acres at the new housing complex. Tasha R. indicated her new residence was a suitable housing environment for her children. Tasha R. denied that she prevented Cruz from viewing any part of her new residence or placed duct tape on the cabinets.

¶ 21          Tasha R. stated her new residence was safer than the old one because it was "surrounded [by] a lot of people." Her old residence was a "mansion ranch" that was "open to the wildlife," including cougars and "hawk birds" that were larger than her children. Her children were afraid of the birds and had to miss school "a couple of days" because of the birds.

¶ 22          The trial court took judicial notice of Tasha R.'s testimony at the adjudicatory hearing, the adjudicatory order, dispositional order, and permanency review orders.

¶ 23          The trial court found the State had not met its burden of proving by clear and convincing evidence that Tasha R was unfit under section 1(D)(p) of the Adoption Act (750

ILCS 50/1(D)(p) (West 2020)) because Carlson was not a licensed clinical social worker, as required by the statute. However, the court stated that Carlson "certainly seem[ed] to be competent" and that its ruling did not mean that it found her testimony to be irrelevant to the other allegations of unfitness. The court found Carlson was "clearly qualified" to provide mental health counseling services even though she was not licensed.

¶ 24    The court found the State had proven by clear and convincing evidence that Tasha R. was unfit under section 1(D)(m)(ii) of the Adoption Act (*id.* § 1(D)(m)(ii)) in that she failed to make reasonable progress toward the return of her children during the nine-month periods from October 15, 2020, through July 15, 2021, and from March 1, 2021, through December 1, 2021. The court found Tasha R. had "significant mental health issues," and she failed to complete the mental health treatment that she was ordered to complete. The court noted Tasha R. only attended two counseling sessions. The court stated Tasha R.'s mental health issues endangered the children's physical, emotional, and mental health. The court found that Tasha R. had not made sufficiently demonstrable progress in addressing her mental health issues during either of the nine-month periods in question such that the children could be returned to her in the near future.

¶ 25    On March 29, 2022, the court held a hearing to determine whether termination of Tasha R.'s parental rights was in the best interest of the minors. Cruz testified that all three children were placed with Godwin E. in March 2020. Godwin E. was the biological father of T.E. and R.E., but not J.R. Cruz had visited Godwin E.'s home and found it to be appropriate for the children. At first, the children struggled with being in a more structured environment than they were accustomed to. T.E. and R.E. were used to taking on parental roles when they lived with Tasha R., and it was difficult at first for them to step back and allow Godwin E. and his

wife to be the parents. However, they had adjusted and were doing well in school. Godwin E. provided age-appropriate discipline and supervision, and Cruz never had "any concerns" about him. The children appeared comfortable in the home and seemed to have bonded with Godwin E. They also seemed happy around his wife. Godwin E. was willing to adopt J.R. and be the primary custodial parent for his natural children.

¶ 26        Cruz stated that, since the last hearing, nothing had changed concerning the status of Tasha R. Neither she nor the caseworker currently assigned to the case had been in contact with Tasha R. The children indicated to Cruz that they loved Tasha R. but did not feel safe around her.

¶ 27        Godwin E. testified that he lived with his wife and the three children. The children were happy living with him. He stated that although J.R. was not his biological child, she believed he was her father. He supported the children in their education, provided healthy food, and made time to go outside and play with them. The children spoke with Tasha R. on the phone approximately once per week. The children did not always want to talk to Tasha R., but Godwin E. always encouraged them to do so. Godwin E. planned to continue having the three children live with him and his wife.

¶ 28        The court found the State had proven by a preponderance of the evidence it was in the best interest of the minors to terminate Tasha R.'s parental rights. The court stated that the children were "thriving" in Godwin E.'s care. The court noted that T.E. and R.E. no longer had to take on parental roles and could just go to school and be children. The court found the children's needs were being met, and they felt safe at Godwin E.'s residence. The court noted approvingly that Godwin E. encouraged the children to have contact with Tasha R. The court stated Tasha R. had not completed mental health treatment and was not "very close to being

found fit." The court found the children needed permanency, as they had been in Godwin E.'s care for over two years. The court stated there would be no permanency without the termination of Tasha R.'s parental rights. The court noted that if "something unfortunate happen[ed]" to Godwin E., the children would legally have to return to Tasha R. if her parental rights were not terminated.

¶ 29 The trial court entered orders terminating Tasha R.'s parental rights as to all three children. The court ordered that J.R.'s permanency goal would be changed to adoption. This appeal followed.

¶ 30                                   II. ANALYSIS

¶ 31 On appeal, Tasha R. argues: (1) the trial court's failure to hold a dispositional hearing within six months of the children's removal from her care rendered the subsequent proceedings void, (2) the court's finding of unfitness was based upon an error of law and was against the manifest weight of the evidence, and (3) the court's finding that it was in the best interest of the children to terminate her parental rights was against the manifest weight of the evidence. We address each argument in turn.

¶ 32                                   A. Voidness

¶ 33 Tasha R. first argues that the trial court's failure to hold a dispositional hearing within six months of the children's removal from her care rendered the subsequent proceedings void because she did not consent to a continuance beyond the six-month deadline set forth in section 22-2(4) of the Juvenile Court Act of 1987 (Juvenile Court Act) (705 ILCS 405/2-22(4) (West 2020)).

¶ 34 Initially, we note that the dispositional order was a final, appealable order. *In re M.J.*, 314 Ill. App. 3d 649, 655 (2000). Accordingly, to challenge the dispositional order on

review, Tasha R. was required under Illinois Supreme Court Rule 303(a), (d) (eff. July 1, 2017) to file a notice of appeal in the trial court within 30 days of the entry of the dispositional order or seek leave from the appellate court to file a late notice of appeal within 30 days from the deadline for filing a notice of appeal. "Compliance with the rules governing the deadline for filing a notice of appeal is mandatory and jurisdictional." *M.J.*, 314 Ill. App. 3d at 654. However, an order entered by a court lacking personal or subject matter jurisdiction is void and may be attacked at any time. *In re M.W.*, 232 Ill. 2d 408, 414 (2009).

¶ 35    Here, Tasha R. did not file a timely notice of appeal from the dispositional order pursuant to Rule 303. Rather, she has appealed only the orders finding her unfit and terminating her parental rights. Accordingly, we lack jurisdiction in this appeal to consider a challenge to the dispositional order unless Tasha R. can establish that the order was void. See *M.W.*, 232 Ill. 2d at 414; *M.J.*, 314 Ill. App. 3d at 654-55.

¶ 36    A judgment in a civil proceeding may be collaterally attacked on voidness grounds " 'only where there is a total want of jurisdiction in the court which entered the judgment, either as to the subject matter or as to the parties.' " *In re Marriage of Mitchell*, 181 Ill. 2d 169, 174 (1998) (quoting *Johnston v. City of Bloomington*, 77 Ill. 2d 108, 112 (1979)). Tasha R. does not argue that the trial court lacked personal jurisdiction over her, and we find the trial court's alleged failure to comply with the statutory time limitations for holding the dispositional hearing did not result in a lack of subject matter jurisdiction.

¶ 37    Except in cases reviewing administrative action, the circuit court's subject matter jurisdiction is "conferred entirely by our state constitution" and "extends to all 'justiciable matters.' " *Belleville Toyota, Inc. v. Toyota Motor Sales, U.S.A., Inc.*, 199 Ill. 2d 325, 334 (2002) (quoting Ill. Const. 1970, art. VI, § 9). Accordingly, this court has held that when the trial court

fails to comply with the time limitations set forth in the Juvenile Court Act, "the trial court does not lose its constitutionally conferred subject-matter jurisdiction," and a judgment entered by the court under such circumstances is not void. *In re John C.M.*, 382 Ill. App. 3d 553, 569 (2008).

¶ 38    The trial court's alleged failure in this case to comply with the six-month time limitation set forth in section 2-22(4) of the Juvenile Court Act did not divest it of subject matter jurisdiction and, accordingly, did not render the dispositional order, or any subsequent orders, void. Consequently, we lack jurisdiction to consider if the trial court's failure to comply with the statutory time limitation was otherwise erroneous. See *M.W.*, 232 Ill. 2d at 414; *M.J.*, 314 Ill. App. 3d at 654-55.

¶ 39                                    B. Finding of Unfitness

¶ 40    Tasha R. argues the trial court's finding that she was unfit based on her failure to make reasonable progress toward the return of her children was "based upon an error of law" and was against the manifest weight of the evidence. Specifically, Tasha R. contends the trial court erred in finding she was unfit based on her failure to comply with the mental health tasks in the service plan because it found the State failed to establish by clear and convincing evidence that she had a mental health impairment rendering her unfit pursuant to section 1(D)(p) of the Adoption Act (750 ILCS 50/1(D)(p) West 2020)). (We note that, in her brief, Tasha R. cites section 1(D)(g) of the Adoption Act (*id.* § 1(D)(g)) rather than section 1(D)(p). However, we presume this was a typographical error, as the State never alleged that Tasha R. was unfit pursuant to section 1(D)(g), and section 1(D)(g) does not concern mental health issues.) Tasha R. also contends the evidence showed she corrected the conditions that brought the children into the care of DCFS because she was no longer covering her vents, taping doors shut, or keeping her home at 90 degrees.

¶ 41         Under the Juvenile Court Act, parental rights cannot be terminated without the

parent's consent unless the trial court determines the State has established by clear and

convincing evidence that the parent is an "unfit person" as defined in section 1(D) of the

Adoption Act. *In re N.G.*, 2018 IL 121939, ¶ 28; 705 ILCS 405/2-29(2) (West 2020). "Although

section 1(D) of the Adoption Act sets forth numerous grounds under which a parent may be

deemed 'unfit,' any *one* ground, properly proven, is sufficient to enter a finding of unfitness.

(Emphasis in original.) *In re C.W.*, 199 Ill. 2d 198, 210 (2002).

¶ 42         Section 1(D)(m)(ii)) of the Adoption Act (750 ILCS 50/1(D)(m)(ii) West 2020))

provides that a parent may be found unfit if he or she fails to "make reasonable progress toward

the return of the child to the parent during any 9-month period following the adjudication of

neglected or abused minor." That section further provides that if a service plan has been

established and the services were available to the parent, " 'failure to make reasonable progress

toward the return of the child to the parent' includes the parent's failure to substantially fulfill his

or her obligations under the service plan and correct the conditions that brought the child into

care during any 9-month period following the adjudication." *Id.* This court has stated:

> " 'Reasonable progress' is an objective standard which exists when the court,
>
> based on the evidence before it, can conclude that the progress being made by a
>
> parent to comply with directives given for the return of the child is sufficiently
>
> demonstrable and of such a quality that the court, in the *near future*, will be able
>
> to order the child returned to parental custody." (Emphasis in original.) *In re*
>
> *L.L.S.*, 218 Ill. App. 3d 444, 461 (1991).

¶ 43         "As a general rule, a trial court's finding that a parent is unfit under section 1(D)

of the Adoption Act will not be reversed on appeal unless that finding is against the manifest

weight of the evidence." *N.G.*, 2018 IL 121939, ¶ 29. A fitness determination is against the manifest weight of the evidence "only where the opposite conclusion is clearly apparent." *Id.*

¶ 44   In the instant case, the trial court's finding that Tasha R. was unfit based on her failure to make reasonable progress toward the return of her children under section 1(D)(m)(ii) of the Adoption Act was not against the manifest weight of the evidence. Cruz testified that the minors initially came into the care of DCFS due to Tasha R.'s mental health issues. The service plan in place during the relevant nine-month periods required Tasha R. to complete mental health treatment. Carlson testified that she evaluated Tasha R., "diagnosed" her with a "[m]ental disorder not otherwise specified," and determined that she needed mental health therapy. Carlson was concerned that Tasha R. was experiencing delusions, "potential paranoia," and possible hallucinations concerning large birds and bobcats. Tasha R. attended only two therapy sessions and was discharged from treatment for noncompliance. At the time Tasha R. was discharged, Carlson believed she was still in need of mental health services. Cruz testified that Tasha R. told her she did not need treatment because she did not believe she had mental health problems. Tasha R.'s testimony at the fitness hearing indicated she still held delusional beliefs about these "hawk birds," which she claimed were larger than her children.

¶ 45   Based on this evidence, the trial court could have reasonably found Tasha R. did not make sufficiently demonstrable progress with the requirements of the service plan such that the court would be able to order the children returned to her in the near future.

¶ 46   We reject Tasha R.'s argument that the trial court erred in finding her unfit based on her failure to comply with the mental health tasks in the service plan when it had found the State "failed to establish that [she] had a mental illness which rendered her unable to discharge her parental duties" under section 1(D)(p) of the Adoption Act. The record shows the court found

the State failed to demonstrate that Tasha R. was unfit under section 1(D)(p) solely because Carlson was not a licensed clinical social worker as required under that section. The court found that Carlson was "clearly qualified" to provide mental health counseling and that her testimony was relevant to the other allegations of unfitness in the petition. The court never found the State had not established that Tasha R. had a mental illness but rather found Tasha R. had "significant mental health issues."

¶ 47 We also reject Tasha R.'s argument that Cruz's testimony that Tasha R. was no longer blocking vents or doors and that her thermostat was not set to a high temperature showed she had "substantially eliminated" the conditions that led to her children's removal. Tasha R. contends the State failed to show that her "odd beliefs" concerning large birds and cougars rendered her unable to discharge her parental responsibilities. We note that Cruz testified she was unable to fully inspect Tasha R.'s residence, as Tasha R. never gave her permission to go upstairs. Moreover, contrary to Tasha R.'s argument on appeal, the issue at the fitness hearing was not whether the State had established a causal relationship between her mental health issues and the behaviors that led to the children's removal. Rather, the issue was whether the State had proven by clear and convincing evidence that Tasha R. failed to make reasonable progress toward the return of her children during one of the specified nine-month periods after the adjudication of neglect. We have concluded the trial court's finding that the State met this burden was not against the manifest weight of the evidence.

¶ 48 C. Best Interest Determination

¶ 49 Tasha R. argues the trial court's ruling that it was in the children's best interest to terminate her parental rights was against the manifest weight of the evidence. Specifically, Tasha R. contends termination of her parental rights as to T.E. and R.E. was unnecessary because

Godwin E.'s participation in the case "effectively rendered the termination of [Tasha R.'s] parental rights as to these children moot." Tasha R. argues T.E. and R.E.'s best interests were "adequately protected" in Tasha R. and Godwin E.'s dissolution of marriage case by modification of the allocation of their parental responsibilities. Tasha R. argues, without citation to authority, that "[a]bsent ascertainable need for DCFS to direct the future placement of these children, a finding that terminating [Tasha R.'s] parental rights is in their best interests is against the manifest weight of the evidence."

¶ 50    Tasha R. also argues that the trial court's finding that it was in J.R.'s best interest to terminate Tasha R.'s parental rights was against the manifest weight of the evidence because there was an "alternative means of achieving [J.R.'s] best interest." Specifically, Tasha R. notes that section 601.2(b)(3) of the Illinois Marriage and Dissolution of Marriage Act (750 ILCS 5/601.2(b)(3) (West 2020)) permits a person other than a parent to file a petition for allocation of parental responsibilities when the child is not in the physical custody of one of her parents.

¶ 51    "At the best-interest stage of parental-termination proceedings, the State bears the burden of proving by a preponderance of the evidence that termination of respondent's parental rights is in the child's best interest." *In re Dal. D.*, 2017 IL App (4th) 160893, ¶ 52. "[A] reviewing court will not reverse a trial court's best-interest determination unless it was against the manifest weight of the evidence." *Id.* ¶ 53.

¶ 52    In determining whether termination of parental rights is in the best interest of a minor, trial courts are to consider the following factors:

> "(1) the child's physical safety and welfare; (2) the development of the child's identity; (3) the child's familial, cultural and religious background and ties; (4) the child's sense of attachments, including love, security, familiarity,

- 16 -

continuity of affection, and the least disruptive placement alternative; (5) the

child's wishes and long-term goals; (6) the child's community ties; (7) the child's

need for permanence, including the need for stability and continuity of

relationships with parent figures and siblings; (8) the uniqueness of every family

and child; (9) the risks related to substitute care; and (10) the preferences of the

person available to care for the child." *In re Daphnie E.*, 368 Ill. App. 3d 1052,

1071-72 (2006).

See also 705 ILCS 405/1-3(4.05) (West 2020).

¶ 53        "A court may terminate the parental rights of one parent while preserving those of

the other parent." *In re S.J.*, 233 Ill. App. 3d 88, 122 (1992). The fact that one parent has not

been, and may never be, found unfit is "merely one additional factor which the trial court may

give whatever weight it believes appropriate" when determining whether it is in the best interest

of the minor to terminate the parental rights of the parent who was found to be unfit. *In re S.M.*,

219 Ill. App. 3d 269, 277 (1991).

¶ 54        Initially, the State argues Tasha R. has forfeited her argument that the trial court's

best interest finding was against the manifest weight of the evidence because she failed to

comply with the requirements of Illinois Supreme Court Rule 341(h)(7) (eff. Oct. 1, 2020).

Specifically, the State contends Tasha R.'s argument fails to comply with Rule 341(h)(7)

because she has cited no authority in support of her contentions that (1) the termination of her

parental rights as to T.E. and R.E. was a moot issue because they resided with their father and

(2) termination of her parental rights as to J.R. was unnecessary because Godwin E. and his wife

could pursue a custody arrangement for J.R. through family court. We agree that Tasha R. has

not cited any legal authority in support of these arguments and has consequently forfeited them.

- 17 -

See *In re P.S.*, 2021 IL App (5th) 210027, ¶ 57 ("Arguments that are not supported by citations to legal authority do not meet the requirements of Rule 341(h)(7) and are procedurally defaulted on appeal.").

¶ 55        Even if we were to excuse Tasha R.'s forfeiture, we would find the trial court's determination that it was in the best interest of the minors to terminate Tasha R.'s parental rights was not against the manifest weight of the evidence. The record shows that the trial court considered the relevant statutory factors in making its best interest determination. The court found the children were "thriving" in Godwin E.'s care, their needs were being met, and they felt safe at his residence. The court found that Tasha R. was not close to being found fit and the children would not obtain permanency without the termination of her parental rights.

¶ 56        Contrary to Tasha R.'s argument on appeal, the fact that Godwin E. was a fit parent did not render the termination of Tasha R.'s parental rights as to T.E. and R.E. moot. See *In re J.B.*, 2019 IL App (4th) 190537, ¶ 38 ("The Illinois Appellate Court has repeatedly rejected arguments from parents that termination of their rights is 'unnecessary' because the other parent provides permanence."). Rather, it was one factor, among many, the court could consider in making its best interest determination. See *S.M.*, 219 Ill. App. 3d at 277. Similarly, the fact that Godwin E. might have been able to obtain custody of J.R. through an "alternative means" did not render the trial court's best interest finding against the manifest weight of the evidence.

¶ 57                       III. CONCLUSION

¶ 58        For the reasons stated, we affirm the trial court's judgment.

¶ 59        Affirmed.